Thank you, Your Honors. May it please the Court, on behalf of Mr. Munoz-Portillo, Your Honors, the District Court here erred by proclaiming Mr. Munoz-Portillo from presenting his theory of defense, which is that he wasn't required to seek advanced consent because, according to the indictment, Mr. Munoz-Portillo was removed in 1999, and he was found in the U.S. in 2015, so it's more than 10 years. That's why it matters, and it looks to me like one of the statutes, the one that helps you, is about applying for a visa. That statute, the one that hurts you, is about being found in the United States without the permission of the Attorney General having been deported. And the times apply to getting a visa, but it looks like the one about being found in doesn't have a time limit. It just makes you be here if you've been deported or else you get a visa. Your Honor, we disagree with these two circuits. They see it as a civil statute, where it says it's a sister circuit. That's correct. It's the 4th and 5th and 6th circuits. That's correct, Your Honor. Your Honor, that's summarized in the sister circuits. We're saying that the 1182 statute is a civil statute, the 1326 statute is a criminal statute, and therefore, there is no time limitation. So when a person who's removed can re-enter the country, right? Correct. They also have different matches in being a civil and criminal, but also in one applying to getting a visa and the other applying to being found without a visa. We disagree, Your Honor. The 1326 aims to be in Congress, as it says there. A person is removable, nonetheless, with respect to any previously denied admission, removed unless such an NHL is established, and he was not required to obtain such advance consent under this chapter or any prior act. So they're referring to the Immigration and Nationality Act. So where do we find those individuals? We find those individuals in section I-212. The I-212 form explicitly states all the people who are non-citizens, who are invisible, who are required to seek advance consent. The government, not even in its brief, has been able to actually explicitly state which part of those non-citizens would fall under the statute, under their wing. It would essentially delete that part of the statute. So everyone, they would always be able to meet the advance consent element of the 1326 defense because no one would ever qualify. The only persons that the government was able to provide for brief was Canadian Native Americans. But Congress has said that those people are U.S. citizens, so they would never be deportable. Your theory is that if someone's been deported, you can just come in again after 10 years? Just finally, to your question, no, it's not. And I think that's what the seizure circuits were concerned with. If you look at the language, they're saying nobody can just come back. And it's like the court of law, I believe, is one of the six circuits. And it's not the case. A person could still be prosecuting criminally for 1325. So they could still be prosecuted. I think that's something that the seizure circuits failed to reveal is that there's not a carte blanche here. The person could still be criminally prosecuted and face up to two years in prison, if not six months in prison, or 18 years in a country. So that's still in the books. Secondly, deportation is a great part of it. And if you look at the illegal entries, there are certain pictures of people sneaking them. The reason, I suspect, your court refused to pin it down is because of the statute of limitations that was put in place. If you can find out for the limitations period, then we're all free. Your Honor, correct. If it's 2535, your statute of limitations is 1%. Whereas taking 1326 would be only when it's found when you found the non-citizen in the U.S. Nonetheless, if that were the case, the person could always be removed from the U.S. So deportation, the Supreme Court has found some sort of punishment to keep persons removed. The person is still civilly deported or punished in that regard. So we don't believe that any non-citizen is free and can come back whenever he wants. And I also want to underscore that this defense is not available to just anyone. I mean, few people actually would qualify on this defense. Do you think you would qualify to submit this defense? It would be so that I might find who, if he were being allowed to persist, because he might have been able to testify, to say, yes, I entered the country on this date. So it's a very small degree. I don't think... Did the district court deny the government's motion limiting? Your Honor, that's right. Did the district court allow you to present the defense, and you didn't predict any evidence and as to date of entry? Your Honor, as we noted in our opening brief, we believe that the district court did deny the government's motion to eliminate, but assumed respect to the invisibility of the IG-94, not to the theory of infestment. The district court made several comments, which the government characterized as amusing. Did you try to introduce the document that would show the date of entry? I don't believe there was a document that showed the date of entry. Well, what would you have put your client on? Yes, we could have actually placed our client on the stand and asked him when he entered the government site's several admissions. I believe, but those are not part of the problem. The jury never heard that information. Did you make a proffer to the district court? No, I did not, Your Honor. There was no proffer. I don't understand how just comments by the district court could prevent you from trying to proffer to a defense. Well, Your Honor, the court said the defense has to have the complications. He also said it was irrelevant with respect to whether a person is allowed to return. All those things were a ruling that precluded Mr. Munoz from presenting his theory of defense, and the government notes that they're going to review their motion to eliminate. I believe it was mischaracterized, since at that point the trial had concluded. They actually, what they raised was an estoppel argument. So I think even by their own claim that they've raised the question of re-urging, what they raised essentially was an estoppel argument, and that is what they, there were various valencia cases about estoppel, whether a person can rely on the I-294. So I think that they even believed that the district court precluded defense counsel from presenting that theory of defense just by the fact that they said, we want to raise an estoppel argument here. That's not something that defense counsel ever raised, that you rely on that or anything of the sort. So if we were to agree with you, you would say that conviction needs to be reversed, and that we tried and found evidence, and he came in after 10 years and does that theory? That's correct. That would be, that's the way we believe the court should find, vacate the conviction, remand it, and have a new trial. And that way, if my client, assuming I can locate him, he could be the refugee center or he's paroled into the country, they can actually have that testimony. By the way, we could re-entitle under section 1325. That's correct. They could do it 1325. So there is a host of things that the government can do still to only prosecute a person who is the same situation as my client. Eliminating to section 901 uses the phrase, seeks admission within five years. Why isn't that the process, seeking admission, that is the basis for viewing permission of the attorney general in 1326? Well, it does, John. If the person is retrieved within those five years, the 10 years or whatever period of removability is, then they are required to seek advanced consent. That's the First Circuit noted, and so even if you were to get a visa, I think there's a confusion here. There's no visa requirement in 1326 HUB. So even if you fell within that period and you got a visa, you would still be required to seek advanced consent. I think the sister circuits don't really understand the esoteric nature in how both statutes actually work in conjunction with each other. There's a distinction, then, between the visa and the consent. I thought the visa was the consent. I thought when you go to a foreign country and you stand in front of the guy at the customs counter and then he stamps the visa in your passport, that's the consent to enter, that's the permission. No, Your Honor. It isn't. In fact, as we noted in our briefs, we noted to the I-212 application, and USCIS, as we're turning to the United States, a visa may not protect you from the consequences of prosecution under IA Section 276. So even if you got a visa and you didn't ask for advanced consent, you could still be criminally prosecuted before reentering the country. So a visa is not a palliative to then saying, look, you're now subject to criminal prosecution. Your Honor, you would file an I-212. So if you file within, again, the 5- or 10-year period or 20-year period of invisibility, you would file the I-212 with USCIS. And then once USCIS says, okay, we're going to grant you a petition, then a non-citizen would be able then to file either a visa or whatever other form of relief to enter the country.  All right. Thank you, counsel. Thank you. Good morning, Your Honors. My name is Cassie Blue, and I represent the United States in this matter. Defendant's failure to provide evidence to support his affirmative defense at a trial was not because the court precluded him from doing so. It was because he had no evidence to support his affirmative defense. This defendant admitted at the time of his arrest that he had returned to the United States two days after his deportation, not waited 10 years, to come back to the United States. He admitted to the probation officer the same... Excuse me just a second right there. We're designing a question of law here rather than a fact. Your Honor, the question of law is not right before this court because this defendant had no defense to present. He's saying that... He didn't have a defense. Oh, you're saying he didn't have the facts to support a defense? No, he's saying he has a defense, which is that an alien is permitted to return without a man's permission after a certain number of years, and he would put that decision on the facts of whether he returned after that time or before that time. Yes, Your Honor, that is his argument, but this court recognized in the United States versus the PA, Gonzales, that it is the defendant's burden to establish his affirmative defense under Section 1326B to be... But you understand it's a defense to be, is it after the 10 years has expired, they can come back in without getting advanced consents? That is what the defendant's... I'm asking you, what is your understanding? Your Honor, my understanding is... The government's understanding. Thank you, Your Honor. The government's position is that after the 10 years, the defendant is still required to obtain advanced consents, and this court actually recognized that. Okay, so I only assume for purposes of discussion of a legal question that has been put before us that he got deported, he stayed deported, and then he came back without permission after 10 years, and he says that's okay, and the government says it's not, and why is it? Your Honor, in CFR Section 12.2, the defendant is correct that what this is required us to do is to look at an interplay between civil immigration law and criminal statute, and as the government's position, Section 1326 places no time limitation on the requirement to obtain advanced consents, and this court recognized that in United States v. Ramirez, in 2000, but if the court is inclined to look at the civil immigration statutes, which again, I would emphasize, this defendant could not meet this burden, I would point the court to being CFR Section 212.2A. In Section 212.2A, it states, this is discussing how an alien goes about either obtaining advanced consent or proving that they don't need to obtain advanced consent, and it states, any alien who has been deported or removed from the United States and is applying for a visa and visiting the United States for adjustment of status must present proof that he or she has remained outside of the United States for the time period, and then it goes on to say, any alien who does not satisfactorily present proof of absence in the United States must still apply for permission to reapply for admission to the United States and is provided under this part. So if a defendant or an individual has left the United States and they have remained outside the United States for the required period of time, even then, they can't just submit their application to enter the United States. They have to provide proof that they stayed outside of the United States for the required period of time. And this defendant admits that he returned to the United States within days of his deportation. Before we get into that, when we decided the case on the basis that he snuck back in within a few days, I thought that the form of the case was that it had been a trial of that issue because it was decided as a matter of law. Your Honor, in my understanding, the issue before this Court is whether he was precluded from presenting in a defense, and part of presenting in a permanent defense is having facts to support that defense. Now, I have a full argument on how the District Court did not conclude in this way. These are all dismissed, which is pretty typical. The defendant wanted a defendant on the basis of self-defense, and the law is that there has to be some evidence to get an instruction, and I think that's what you're talking about. You had no evidence. You put forward the defense, but I thought his claim was, no, no, the judge didn't say they couldn't put on a defense because they didn't have evidence. The judge said they couldn't put on a defense because it wouldn't be a defense. The judge didn't... For example, if somebody says they have a good defense, then the victim deserved it. That may be a persuasive defense in certain circumstances, but it's not a legal defense. Well, in fact, what happened during trial in this case was that the defendant was allowed to present a full defense. The government moved in limine to preclude the defendant from asking questions regarding the I-294, and the I-294 is the immigration form which the defendant receives when they're being deported from the country, which provides warnings. In this instance, the box was checked on the I-294, which stated that he could not reapply for admission, so there's a two-step process with the immigration law. If you've been removed, there's the obtaining consent to reapply for admission, and then the application itself of applying for admission, and these people who've been removed are told you can't even apply for admission for ten years without first obtaining the consent of the attorney general to submit that application. And so he received that warning, and the defendant included that in one of his trial exhibits, which the government knew at that time, once we saw that he wanted to admit this warning, that what he was going to suggest was that because this defendant was found in the United States more than ten years after he was deported, he no longer had to obtain the advance consent. But those are two completely different issues. One is whether or not he had to obtain the advance consent, and one is the found-in date, which is relevant to the 1326 prosecution. So the government was concerned about the defendant asking questions or calling for legal conclusions from the witnesses, and this defendant no longer had to obtain the advance consent. Okay, so what troubles me in this case is that it seems that in 1326, the Congress expressing provided a defense, and they had to be complaining someone who was not someone who had been previously removed, who was not required to obtain advance consent. Now, who would that be? Well, Your Honor, is there evidence? Is there an answer? Like you said, is there a hand in? What Congress was contemplating there? There is not, Your Honor. And what I can say is that although that is a very important legal question, it is not a question in this case. I am the answer with this question, because I might get there, and you should be prepared to give me an answer to start. Should I get there? Sure, Your Honor. What I would say is that in 1981, the section 1182 was amended to provide these time limitations for how long somebody had to obtain advance consent. Before that, everyone had to obtain advance consent, and this defense, in Section 1326 ATP, existed before the time limitations and after. So, even back when everyone was required to obtain advance consent, this defense was written into Section 1326 A2B. So, the question is, why is 16th Congress creating a defense that doesn't have advance consent? No, Your Honor, I'm not saying that. No, you said at the time it wasn't active. Well, Your Honor, one court has found that the defense would apply if we voted an operation in the United States versus a hearing in the Eighth Circuit to American Indians born in Canada are allowed to pass through the borders of the United States without obtaining advance consent. That's based on the statute, Section 8 U.S.C. Section 1359. I can envision other scenarios where perhaps a descendant had an order of removal, and while he was on appeal, they agreed to go ahead and remove him because they didn't want to wait being incarcerated. If that order of removal was overturned, then they would no longer be barred and would not need to obtain advance consent. But it certainly does not apply to this defendant who illegally returned to the United States within days of his deportation, and he didn't present evidence at trial by calling his client to testify because he had no evidence. You're saying, in any event, he wouldn't have this defense, and the instruction you asked for and got said, the requirement for the entry of a remitted daily does not contain any time limitation on the requirement that you then obtain the consent that the attorney general asked for. Literally true. But it does also apply to this defense. Your Honor, I'm not an expert in immigration law in terms of figuring out who this defense would apply to, but in 2004, the Fifth, Sixth, and the Circuit have all said that there is no time limitation on obtaining the court-filed advance consent. May I put a little more clarification on this point that Judge Warhol has been discussing with you? 1326 is usually discussed in terms of 1326A2A, which makes it a crime to be found in unless prior to reimbarkation, the attorney general has consented. But it says in subsection B, 1326A2B, that it's not a crime if the alien establishes that he wasn't required to obtain such advance consent. Are there any cases where an alien who's been arrested and deported or excluded and deported is not required to obtain advance consent other than, as you mentioned, where the order for removal was vacated or some other case coming into Canada? Your Honor, I'm not aware of, but I would point out that you just brought up another interesting issue regarding this affirmative defense, which before the 1996 changes to the INA, the 12th and the 1326 affirmative defense was with respect to an alien previously arrested and deported. And pre-1996, there was a distinction between aliens arrested and deported. And, I'm sorry, the other term is excluded and deported. And it only applied, I'm sorry, it was with respect to an alien previously excluded and deported, and it was clear that it did not apply to defendants arrested and deported. And post-1996, now we have denied admission and removed. I think that there may have been some careless changes to the affirmative defense that would certainly deny intent to allow any alien who has been deported or removed from the United States to come back illegally after a certain period of time. And I don't think... I think it seems to me you had that, because subsection B is an exception, and it says if he's not required to obtain advance consent. But he was required to obtain advance consent. And I would take the court back to 8 CFR section 212.2 of it. So the point, he is outside the United States and submits proof that he remained outside the United States for 10 years. That requirement of advance consent still exists for him. It doesn't just disappear. I think it makes a criminal law and a regulation. A criminal law has to be within the statute. I agree, Your Honor, but this whole conversation has been taking us to civil immigration laws for the guidance on what is advance consent. And the civil immigration laws require that an individual either prove that they remained outside, and this is all part of the application process for entering the United States. This is not part of people illegally returning to the United States. These are the requirements for individuals, and what they need to do is they want to obtain the advance consent or they no longer have to obtain the advance consent. They no longer have to obtain the advance consent. They first have to prove that they remained outside of the United States for 10 years. And in this case, we have a defendant who came back within two days. He had no proof of that and could not establish his affirmative defense. All right. Thank you, counsel. Thank you. We have a record here. I think I'm on. So we'll move on to this morning's argument. We'll work on that. All right. Thank you. So we have a simple jurisdiction for Tao. I just have an argument. I think it was just a question of the jurisdiction by its sources to be established.
judges: Kleinfeld, Wardlaw, Peterson